Mario QUINTANILLA

v.

**K-BIN, INC., Shintech, Inc., and N.F. Giannone, M.D.**

**Civil Action No. G–97–608.**

United States District Court,
S.D. Texas,
Galveston Division.

Feb. 3, 1998.

---

David T. Lopez, David Lopez & Associates, Houston, TX, for Plaintiff.

G. Mark Jodon, Ogletree Deakins Nash Smoak Stewart, Houston, TX, Ervin A. Apffel, Jr., McLeod Alexander Powel & Apffel PC, Galveston, TX, for Defendants.

## *ORDER*

KENT, District Judge.

In this action, Plaintiff asserts claims of race discrimination, national origin discrimination, false light invasion of privacy, negligence and gross negligence, and intentional infliction of emotional distress. Now before the Court is the Motion for Partial Dismissal of Defendants K–Bin and Shintech (the "Defendant companies"), filed December 22, 1997. Defendants move to dismiss Plaintiff's claims of false light invasion of privacy, negligence and gross negligence, and intentional infliction of emotional distress. For the reasons stated below, the Motion is **GRANTED.**

## I. FACTUAL BACKGROUND

Plaintiff Quintanilla was employed by Defendant K–Bin[1] as a process development technician supervisor in K–Bin's Research and Development Department. In accordance with K–Bin's regular policy and practice of periodically testing its employees for the use of illegal controlled substances, Quintanilla was randomly tested on or about May 21, 1996. The test result came out positive for a cocaine metabolite. Upon being informed of the positive result, Quintanilla immediately informed his supervisor that he suspected the result was due to herbal teas that he had purchased in Mexico. At his supervisor's suggestion, Quintanilla took samples of the tea to the company which performed the laboratory analysis, who referred them to a physician, Defendant Giannone. Giannone informed Plaintiff that "there was nothing in the teas which could have caused the positive detection of a controlled substance." Based on the test results and Giannone's conclusions, K–Bin terminated Plaintiff's employment.

Plaintiff alleges that after he was fired, K–Bin rejected his offer to have the teas tested by a laboratory, and that even after testing by an independent laboratory confirmed that the tea would produce a "minute" quantity of cocaine metabolite, the company steadfastly refused to reinstate Quintanilla.

## II. ANALYSIS

■ Preliminarily, the Court addresses Plaintiff's contention that Defendants' Motion should be disregarded because it was presented contrary to FED. R. CIV. P. 12(b). That Rule states that a motion making a defense subject to the Rule, including failure to state a claim upon which relief can be granted, "shall be made before pleading if a further pleading is permitted." Because Defendants both filed Answers to Plaintiff's Complaint on December 19, 1997, and did not file the instant Motion until December 22, 1997, Plaintiff argues that the Court cannot consider the Motion.

The Court finds that the defense asserted by Defendants was not waived by untimely filing. First, FED. R. CIV. P. 12(h)(2) clearly preserves the defense of failure to state a claim upon which relief can be granted from the waiver mechanism of Rule 12(h)(1), and allows parties to raise such a defense as late as during trial. Furthermore, both Defendant companies stated failure to state a claim upon which relief can be granted under Rule 12(b)(6) as a "First Defense" in their Answers. Therefore, the defense was timely included in the Answer and was not waived. *See Gerakaris v. Champagne,* 913 F.Supp. 646, 650–51 (D.Mass.1996) (citing 5A CHARLES ALAN WRIGHT and ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1361 (1990)).

When considering a Motion to Dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint, and views them in the light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). Such motions should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

### A. *False Light Invasion of Privacy*

■ Texas does not recognize the tort of false light invasion of privacy. *See Cain v. Hearst Corp.,* 878 S.W.2d 577 (Tex.1994). Although Plaintiff agrees that Defendant has accurately characterized the current state of the law in Texas on this issue, he nevertheless argues that the Court should make an exception in this case. Plaintiff argues first that the Texas Supreme Court in *Cain* was concerned that a false light invasion of privacy cause of action would exacerbate the tension between constitutionally protected free speech and tort law, and be duplicative of other remedies such as defamation. Because there are no free speech issues in this case,

---

**1.** Plaintiff also asserts that K–Bin and Shintech are affiliated companies and that both should be considered to be his employer. Although Defendants contend that this assertion is false, they offer no attempt to dismiss Shintech on this basis.

Plaintiff concludes that *Cain* is not applicable. Although the Court admires Plaintiff's counsel for having "exercised his duty to preserve an important issue for well-deserved further consideration," it is neither empowered nor inclined to overrule the Texas Supreme Court on a well-established rule of state law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (federal courts have no power to declare substantive rules of state law). Accordingly, Defendants' Motion to Dismiss Plaintiff's claim of false light invasion of privacy is **GRANTED,** and that claim is **DISMISSED WITH PREJUDICE.**

## B. *Negligence and Gross Negligence*

■ Next Defendants argue for the dismissal of Plaintiff's claims of negligence and gross negligence. To plead a claim for negligence, Plaintiff must show a legal duty, breach of that duty, and damages proximately caused by the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Quintanilla claims that Defendants had a legal duty to evaluate his explanation for the positive drug test result because Quintanilla signed a consent to the test which gave his employer the power to terminate him if his drug test revealed "an *unexplained* presence of a drug and/or alcohol." Quintanilla argues that this "consent" form created a legal duty in Defendants to reasonably consider and evaluate his explanation before taking disciplinary action. Essentially, Plaintiff advances an argument for a duty of good faith and fair dealing in an employment-at-will context. Plaintiff does not argue that his employer had any other duty, and in fact explicitly disavows any claim "that the testing process was negligently conducted," that the Defendants are liable for the testing laboratory's actions, or that the Defendant companies failed to provide adequate safeguards in their drug screening process.

■ The Court refuses to sustain Plaintiff's feeble attempt to create an *ad hoc* legal duty in his employer through a drug testing consent form that he signed. In Texas, there is no legal tort duty between parties to a contract unless a special relationship exists in the law. *Doe v. SmithKline Beecham Corp.,* 855 S.W.2d 248, 257–58 (Tex.App.— Austin 1993), *overruled on other grounds,* 903 S.W.2d 347 (Tex.1995). An employment relationship governed by the at-will doctrine does not give rise to a special relationship. *Id.* Further, employment contracts do not encompass the duty of good faith and fair dealing in Texas. *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 284 n. 1 (Tex. 1993); *Collins v. Allied Pharmacy Mgmt., Inc.,* 871 S.W.2d 929, 935 (Tex.App.—Hous. [14th Dist.Allison] 1994, no writ). As Plaintiff was employed as an at-will employee, no duty arises on the part of his employer unless the alleged tort occurred independently from any contract between the two; that is, unless the tort would be actionable regardless of any relationship existing between the parties. *Doe,* 855 S.W.2d at 257–58. The duty alleged by Quintanilla, that the Defendant companies had a duty to evaluate his explanation for the positive drug test result, could not have arisen independently from the employment relationship. Therefore, there was no legal duty on the part of his employer, and Plaintiff's claim of negligence must be dismissed.[2]

■ Plaintiff's claim of gross negligence must be dismissed under the same reasoning as the negligence claim, but also for the more basic reason that the conduct complained of falls well short of the requirements for gross negligence. Gross negligence requires that the actor has subjective actual knowledge of an objectively extreme risk created by his behavior. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21 (Tex.1994). "The 'extreme risk' prong is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather 'the likelihood of serious injury' to the plaintiff." *Id.* (quoting *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 327 (Tex. 1993)). The possibility that the plaintiff may be harmed by termination for failing a drug test, especially where there is absolutely no

---

**2.** The negligence and gross negligence claims must also be dismissed because this Court has repeatedly held that a plaintiff cannot pursue pendent state claims of negligence for an act alleged under a contemporaneous cause of action to be intentional discrimination.

allegation that the results of the test were not accurate or that the testing was negligently performed, does not even begin to rise to the level of extreme risk required for gross negligence. Accordingly, Defendants' Motion to Dismiss Plaintiff's claims of negligence and gross negligence is **GRANTED,** and those claims are **DISMISSED WITH PREJUDICE.**

## C. *Intentional Infliction of Emotional Distress*

 Finally, Defendants argue for dismissal of Plaintiff's claim of intentional infliction of emotional distress. Texas law establishes a high standard for establishing the tort of intentional infliction of emotional distress, and Plaintiffs' allegations, even if completely true, once again fall short of the requirements. To prevail on a claim of intentional infliction of emotional distress in Texas, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir.1993) (citing *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989)). Whether conduct is extreme and outrageous is initially a question of law for the Court. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). Liability will only be found " 'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* (quoting RESTATEMENT (SECOND) TORTS § 46 cmt. d). Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1143 (5th Cir.1991).

In this case, even if all of Plaintiff's allegations are true, the Defendants' actions do not even approach the level of outrageousness required to support the tort of intentional infliction of emotional distress. Plaintiff concedes that his test results were positive, and does not allege any wrongdoing in the administration of the test. Plaintiff advances as the basis for his claim of intentional infliction of emotional distress not merely that he was terminated, but that "the acts and omissions of the defendants ... branded him a drug user." The Court holds that where an employer has reason to suspect that an employee is using illegal drugs, it is neither outrageous nor extreme to terminate that employee, especially after receiving confirmation (in this case, from Dr. Giannone) that the employee's explanation was inadequate, and regardless of the consequence that the employee may be "branded." *See Diamond Shamrock Refining & Mktg. Co. v. Mendez,* 844 S.W.2d 198, 202 (Tex.1992) (false depiction of plaintiff in the community as a thief does not raise fact issue of outrageous conduct); *Washington v. Naylor Indus. Serv., Inc.,* 893 S.W.2d 309, 313 (Tex.App.—Hous. [1st Dist.] 1995, no writ) (no extreme or outrageous conduct where employer communicated employee's positive drug test results to others); *see also Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995) (no extreme or outrageous conduct where store questioned manager about possible theft). In fact, for Plaintiff to even suggest that such facts could rise to the level of intentional infliction of emotional distress is frivolous on its face. Accordingly, the Defendants' Motion to Dismiss Plaintiff's claim of intentional infliction of emotional distress is **GRANTED,** and that claim is **DISMISSED WITH PREJUDICE.**

## III. CONCLUSION

For the reasons stated above, the Motion for Partial Dismissal of Defendants K–Bin and Shintech is hereby **GRANTED.** Plaintiff's claims of false light invasion of privacy, negligence and gross negligence, and intentional infliction of emotional distress are **DISMISSED WITH PREJUDICE** as to the Defendant companies, and the claims of false light invasion of privacy and intentional infliction of emotional distress are *sua sponte* **DISMISSED WITH PREJUDICE** as to Defendant Giannone.[3] All parties are **OR-**

---

**3.** While the reasoning behind the dismissal of these two claims is equally applicable to all De-

DERED to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED.**

fendants, the negligence analysis does not apply to Defendant Giannone.